IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARTIE K. V.,[1] | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-1392-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for disability benefits in December 2016, alleging disability as of July 8, 2016. After holding an evidentiary hearing, an ALJ denied the application on January 24, 2019. (Tr. 13-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 8 & 9.

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ erred by cherry-picking portions of the medical evidence.

2. The ALJ erred in equating minimal activity with the capacity to perform substantial gainful activity, and thereby failed to find greater than moderate persistence impairment and a more limited RFC.

3. The ALJ erred by failing to account for deficits of concentration, persistence, or pace in the RFC.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

disabled.  A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which Plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above.  She determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date.

Plaintiff is insured for DIB through March 31, 2021.

The ALJ found that Plaintiff has severe impairments of tendinosis and osteoarthritis of left shoulder, mild bilateral median nerve entrapment, degenerative disc disease, depression, anxiety, and cannabis use disorder.

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level:

> …except the claimant cannot climb ladders, ropes, or scaffolds due to his back and shoulder impairments, but he can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, crouch, or crawl, but he cannot reach overhead or bilaterally push or pull. The claimant is limited to frequent handling and fingering due to his carpal tunnel symptoms. The claimant is limited to performing simple, routine, or repetitive tasks but not in a fast-paced environment, such as an assembly line, and he is limited to work that requires only occasional changes in the work setting.

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff is unable to perform past relevant work, but there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

**1.   Agency Forms**

Plaintiff was born in 1965 and was 53 years old on the date of the ALJ's decision. (Tr. 209). Plaintiff said he stopped working in July 2016 because of his conditions. (Tr. 213). He worked as a laborer/brick layer for a construction company from 2000 to 2016. (Tr. 214).

In a Function Report submitted in January 2017, Plaintiff said upon waking up, he will

drink coffee, take pain medication, try to do some chores, take a hot bath, and will lie back down for about one to one and a half hours. Plaintiff said his mental impairments cause sleep difficulties and affect his personal care. He said, because of his depression, he lets himself go until his family members tell him he has odor. Plaintiff said he makes sandwiches and microwavable meals daily. Plaintiff said he does some dishwashing and some laundry, and both take all day. However, Plaintiff said his depression keeps him from doing house or yard work at times. Plaintiff said he stopped taking part in his hobbies and interests because of his depression. Plaintiff said he has become anti-social, and his conditions affect his task completion and concentration as he has trouble concentrating on any one thing. Plaintiff said he can tolerate a short list of instructions but does not follow spoken instructions very well; does not handle stress or changes in routine very well; and has nervous breakdowns and high anxiety. (Tr. 232-37).

### 2.     **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in October 2018. (Tr. 36). Plaintiff testified that he was suicidal at one point due to his depression and has issues with his energy and motivation levels which depresses him more. Plaintiff said he used to cry on a weekly basis. He said he took Cymbalta for depression but quit taking it because he did not like the side effects. Plaintiff said he does not currently go to counseling, but he tried it in the past and thought counseling was disappointing because, "They don't care to do much at all, psychiatrists or counselors." Plaintiff said the combination of his depression and anxiety causes constant issues with his ability to concentrate and focus. Plaintiff said on a good day he will mow the grass, walk around, and maybe do the dishes. (Tr. 48-52).

A vocational expert (VE) testified at the hearing. The ALJ presented hypotheticals to the

VE which corresponded to the ultimate RFC findings, and the VE testified that a person with Plaintiff's RFC could not perform his past work. The VE testified this person could do jobs such as a work ticket distributor, a weight recorder, and an information clerk. (Tr. 56-57). Plaintiff's attorney asked the VE if being off task fifteen percent of the time would prohibit competitive work, and the VE responded saying, "That would be precluded." (Tr. 59).

### 3.     Relevant Medical Records

Plaintiff presented to Monika Krupska-Buckley, a physician assistant at a pain management office, eleven times between November 2015 and June 2017. (Tr. 430, 440, 442, 450, 463, 466, 469, 560, 563, 885, 889). Plaintiff reported depression; good mood results from venlafaxine and having stopped taking it when his prescription ran out; feeling bad in the morning; feeling irritable; not feeling like himself; feeling anxious; feeling stressed; and mild improvement with Cymbalta. (Tr. 431, 443, 469, 563, 889-90). PA Krupska-Buckley noted Plaintiff was alert and oriented; had no abnormalities of speech, comprehension, concentration, or attention; was cooperative and conversant; was somewhat restless; had good insight; had a positive and appropriate affect; and had coherent thoughts. (Tr. 432, 441, 444, 452, 465, 467, 470, 562, 564, 887-88, 890-91). Diagnoses included anxiety and depression, and plans included continuing Venlafaxine[4], behavioral health appointments, and seeing a psychiatrist. (Tr. 440, 442, 451, 563, 889).

Plaintiff presented to OSF St. Anthony's Health Center over fifteen times between December 2015 and August 2018. (Tr. 421, 426, 434, 437, 465, 553, 565, 891, 898, 905, 1142,

---

[4] "Venlafaxine is used to treat depression. It is also used to treat general anxiety disorder, social anxiety disorder, and panic disorder." https://www.mayoclinic.org/drugs-supplements/venlafaxine-oral-route/description/drg-20067379, visited on September 18, 2020.

1165, 1215, 1223, 1231).  Plaintiff reported stress, anxiety, and depression at various appointments.  (Tr. 565, 893, 1166).  Examinations revealed Plaintiff had a normal mood and affect, yet sometimes was anxious, very irritated, and nervous; was alert and oriented; was cooperative; had poor grooming and hygiene; had no problem with concentration and attention; had fluent speech; had a good fund of knowledge; had good memory; and he had normal mental status examinations at various appointments.  (Tr. 423, 429-30, 437, 439, 465, 556, 566, 895-96, 902-03, 910-11, 1145-46, 1169-70, 1219, 1226, 1234).  Impressions included depression that was controlled on Effexor[5].  (Tr. 426, 434, 437, 553).

Plaintiff presented to the Orthopedic and Sports Medicine Clinic twelve times between February 2016 and June 2018.  (Tr. 622, 626, 630, 634, 640, 646, 652, 1013, 1017, 1020, 1023, 1028).  Plaintiff reported anxiety and depression.  (Tr. 623, 627, 631, 635, 641, 647).  Physical examinations revealed Plaintiff was fidgety at times and well-groomed.  (Tr. 624, 628, 632, 636, 642, 648, 653, 1014, 1018, 1021, 1024, 1029).  Plans included continuing treatment for depression.  (Tr. 1025).

On February 4, 2016, Plaintiff told a physical therapist that he was really stressed and thought he was depressed.  (Tr. 457).

Plaintiff presented to Daniel West, a dermatologist, five times between May 2016 and April 2017.  (Tr. 590, 596, 604, 613, 1245).  Dr. West noted Plaintiff was alert and oriented and had an appropriate affect.  (Tr. 590, 597, 605, 614, 1247).

Plaintiff presented to Kren Harmon, a licensed clinical social worker, twice in March 2017 and once in April 2017.  (Tr. 556, 873).  Plaintiff reported being on antidepressant and anxiety

---

[5] Effexor is the brand name for Venlafaxine.  https://www.mayoclinic.org/drugs-supplements/venlafaxine-oral-route/description/drg-20067379, visited on September 18, 2020.

medications; a history of suicidal thoughts; frequently feeling tense; feeling like his life had no purpose; feeling helpless and hopeless; feeling uninterested in most activities; doing some yardwork and mowing small yards; and pacing his activities enjoyed.  (Tr. 556-57, 873, 1006). LCSW Harmon noted Plaintiff appeared appropriate; had normal speech; had normal thought processes and content; had appropriate and good judgment; had appropriate and good insight; was oriented to person, place and time; had grossly intact recent and remote memory; had grossly intact attention and concentration; had a grossly intact fund of knowledge; had a normal mood and affect; and had normal behavior.  (Tr. 557, 873, 1006).  The diagnoses included mood disorder with depressive features, anxiety and depression, and plans included venting feelings, identifying precipitants, and improving his mood and ability to cope.  (Tr. 558, 874, 1007).

Plaintiff presented to Brieanne Graham, a licensed clinical social worker at Centerstone, on August 28, 2017, reporting stress over financial issues, being scatter-brained about things, and not feeling great about himself.  LCSW Graham noted Plaintiff presented with a change in mood and affect. Plans included follow-ups.  (Tr. 1080).

Plaintiff presented to April McDougal, a social worker (MSW), on August 31, 2017, and underwent an Adult Diagnostic Assessment.  Plaintiff reported crying spells; depressed moods; loss of energy; frequent thoughts of death; racing thoughts; anxiety; compulsive behaviors; feeling detached from others; anger outbursts; tense muscles; having difficulties focusing, concentrating, and being easily distracted; and an exaggerated startle response.  (Tr. 1037).  Plaintiff said he had limitations of daily living activities regarding how he cares for himself and how he interacts with others.  MSW McDougal noted Plaintiff was cooperative; had avoidant eye contact; had clear speech; had appropriate thought content; had logical thought processes; was anxious; had a full

affect; had intact memory; had no attention deficits; had fair insight and judgment; and had no orientation impairment. (Tr. 1040-41). The diagnoses were major depressive disorder, generalized anxiety disorder, and alcohol use disorder, and plans included outpatient therapy. (Tr. 1043-44).

Plaintiff filled out a mood disorder questionnaire on August 31, 2017. Plaintiff said he had a history of being so easily distracted by things around him that he had trouble concentrating or staying on track. (Tr. 1102).

Plaintiff presented to LCSW Graham on November 1, 2017, reporting having a rough couple of weeks. LCSW Graham noted a change in Plaintiff's mood, affect, behavior, and functioning. Plans included further therapy. (Tr. 1082).

Plaintiff presented to Arif Habib, a psychiatrist at Centerstone, once a month between November 2017 and February 2018, reporting depression, anxiety, and substance abuse. (Tr. 1062, 1064, 1067, 1070). Dr. Habib noted Plaintiff had questionable insight and judgment; had normal impulse control; had intact memory; was cooperative; had an appropriate affect and mood; had normal speech; was oriented; had fair motivation; was able to maintain focus; had logical thought processes; and had a normal fund of knowledge. (Tr. 1063, 1065, 1068, 1071). The diagnoses included alcohol use disorder, generalized anxiety disorder, and major depressive disorder, and plans included medications and practicing coping skills. (Tr. 1063, 1065, 1068, 1071).

Plaintiff presented to LCSW Graham on November 15, 2017. LCSW Graham noted a change in Plaintiff's mood and affect. Plans included further therapy. (Tr. 1084).

Plaintiff presented to LCSW Graham on December 11, 2017, reporting managed

depression and anxiety symptoms. LCSW Graham noted a change in Plaintiff's mood and affect. Plans included further therapy. (Tr. 1086).

Plaintiff presented to Yusuf Mohyuddin, a family medicine specialist, on January 3, 2018. Dr. Mohyuddin said Plaintiff had an appropriate affect and speech. The assessment included anxiety and depression, and plans included a follow-up. (Tr. 952-53).

Plaintiff presented to LCSW Graham on February 21, 2018, reporting increased anxiety. LCSW Graham noted a change in Plaintiff's mood and affect and said there was not much improvement in Plaintiff's views of himself. Plans included further therapy. (Tr. 1092-93).

Plaintiff presented to Debra McDonald, a licensed practical nurse, on April 3, 2018, reporting anxiety. (Tr. 964).

Melissa White, a licensed clinical professional counselor at Centerstone, discharged Plaintiff from mental health treatment on April 12, 2018, due to lack of engagement by not attending appointments. LCPC White said Plaintiff still had room for progress. (Tr. 1103-04).

Plaintiff presented to Lea Varble, a licensed clinical social worker, on June 20, 2018, and underwent a Health Psychological Assessment. Plaintiff reported financial, medical, and relationship stressors. LCSW Varble noted Plaintiff was oriented to person, place, time, and situation; was restless; was fidgety; had poor eye contact; was anxious; was sad; had a loss of interest and energy; was depressed; and had poor concentration. (Tr. 1007-08). The diagnosis included major depression disorder, and Plaintiff said, "I don't really want to come to counseling." (Tr. 1009).

Plaintiff presented to Dr. Mohyuddin on July 3, 2018, reporting feeling depressed. (Tr. 974).

## Analysis

Plaintiff argues the ALJ engaged in cherry-picking regarding certain medical evidence and in incorrectly reciting Plaintiff's statements as to his activities of daily living.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Moreover, the ALJ must "engage sufficiently" with the medical evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation and internal quotations omitted). However, the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Plaintiff argues that the ALJ relied on a cherry-picked portion of one psychiatric treatment note at Tr. 1063. Plaintiff is correct. The ALJ only spoke of normal mental status findings and failed to discuss or acknowledge the November 2017 findings where Plaintiff had fair motivation and had questionable insight and judgment. Normally, such an incident where certain objective findings from one isolated medical appointment were overlooked or not included in the decision would not be enough for remand. An ALJ need only engage sufficiently with the evidence. However, the problem here lies in the repetitive failure to acknowledge objective findings that are

supportive of Plaintiff's position and contrary to the ALJ's opinion. At Tr. 23, the ALJ mentioned objective findings that Plaintiff had avoidant eye contact, psychomotor agitation, and was anxious, irritated, and nervous. Those are the only references by the ALJ to mental medical evidence unsupportive of her decision. As stated above, there were other objective findings, additional to those stated above from the November 2017 appointment, that Plaintiff had poor grooming and hygiene; was fidgety; was restless; was sad; had loss of interest and energy; was depressed; and had poor concentration. These unacknowledged objective findings point to a level of cherry-picking that, although not the most severe of circumstances, is enough to require remand.

Furthermore, Plaintiff argues that the ALJ erred in equating minimal activity with the capacity to perform substantial gainful activity.

"An ALJ may not equate activities of daily living with those of a full-time job…But an ALJ is not forbidden from considering statements about a claimant's daily life." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). An ALJ may consider the claimant's activities of daily living to determine whether the claimant's symptoms are as high in severity as alleged. *Id*. at 593. Overall, Plaintiff is correct that the ALJ erred in her referencing Plaintiff's activities of daily living. As the Seventh Circuit indicated in *Jeske*, an ALJ is not forbidden from considering activities of daily living, but the ALJ cannot use that information and equate it to full-time work.

Here, the ALJ did refer to Plaintiff's activities of daily living many times in explaining her opinion. This, alone, is not enough to require remand. Nonetheless, Plaintiff is correct that the ALJ inaccurately recounted Plaintiff's statements as to his activities of daily living. The way the ALJ recounted Plaintiff's statements implied Plaintiff can engage without limitation in personal care and household chores. However, Plaintiff said he will "try" to do the dishes and laundry,

and he would fail at personal hygiene to the point that his family would comment on his bodily odor as a result. While undoubtedly an error by the ALJ, this, as above, is not enough alone to require remand. However, the problem here lies in the combination of things. The ALJ's cherry-picking as described in the preceding paragraphs combined with the ALJ's consistent and incorrect recitations of Plaintiff's statements regarding his activities of daily living suggest that the ALJ's decision was based on a somewhat skewed version of the record. Therefore, this Court agrees with Plaintiff.

Lastly, Plaintiff asserts the ALJ erred by failing to account for specific deficits of concentration, persistence, and pace within the RFC finding.

If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE. The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Yurt v. Colvin*, 758 F.3d at 857; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019), *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). What is notable here and what affects this case, however, is the state agency reviewing consultants did not believe Plaintiff has a moderate impairment of concentration, persistence or pace.

The ALJ limited Plaintiff to performing, "simple, routine, or repetitive tasks but not in a fast-paced environment, such as an assembly line," and this goes farther than the limitation to

simple work with few changes that was at issue in the cases cited by Plaintiff. Further, the ALJ here explained at step three that mental status exams showed Plaintiff had normal impulse control, fund of knowledge, and eye contact; had logical and goal-directed thought processes; was fully oriented; was able to maintain focus; had a steady gait and posture; and had no hallucinations. (Tr. 18). The ALJ later explained that the medical records reflected other normal mental status examinations, including intact recent memory, remote memory, fund of knowledge, language, attention, and concentration, and normal mood, affect, thought processes, thought content, behavior, and speech. (Tr. 22-23).

Plaintiff's argument lacks strength in other areas. First, the cases cited by Plaintiff are inapposite. In *Moreno*, the state agency reviewing consultant concluded that the plaintiff had a moderate limitation in maintaining concentration, persistence or pace and the treating doctor documented such problems in his treatment notes. *Moreno*, 882 F.3d at 729. Similarly, in *O'Connor-Spinner*, the state agency reviewing consultant concluded that the plaintiff had a moderate limitation in maintaining concentration, persistence or pace and ALJ included that limitation in his RFC assessment but omitted it from the hypothetical question. *O'Connor-Spinner*, 627 F.3d at 617.

Here, in contrast, one state agency reviewing consultant concluded that Plaintiff had no impairment of concentration, persistence or pace, and a second state agency reviewing consultant concluded that Plaintiff had only a mild impairment of concentration, persistence or pace. (Tr. 78, 94, 107). Additionally, Plaintiff's doctors and counselors frequently documented normal concentration, attention, and focus, despite one appointment in which Plaintiff was described as having poor concentration. Plaintiff testified that he had problems with concentration and focus,

but the ALJ was obviously not bound to accept his testimony and Plaintiff has not challenged the ALJ's weighing of his credibility.   Where Plaintiff's argument is lacking strength is in the state agency reviewing consultants' opinions where they found Plaintiff had either no impairment of concentration, persistence or pace, or just a mild impairment of concentration, persistence, or pace.

This Court is remanding the Commissioner's decision based on Plaintiff's first two issues. On remand, the ALJ must reconsider the mental residual functional capacity after properly considering the medical evidence and Plaintiff's activities of daily living.

This Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: October 1, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**